691 A.2d 430

ALLOCCO AND LUCCARELLI, PLAINTIFFS, v. TOWNSHIP OF HOLMDEL AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF HOLMDEL, DEFENDANTS.

HOLMDEL RESIDENTS FOR REASONABLE DEVELOPMENT, INC., PLAINTIFF, v. ZONING BOARD OF ADJUSTMENT FOR THE TOWNSHIP OF HOLMDEL AND REVLON, INC., DEFENDANTS.

TOWNSHIP OF HOLMDEL, PLAINTIFF, v. ZONING BOARD OF ADJUSTMENT FOR THE TOWNSHIP OF HOLMDEL AND REVLON, INC., DEFENDANTS.

Superior Court of New Jersey
Law Division Monmouth County

January 30, 1997—Decided May 15, 1997.

492

*Robert F. Munoz* for plaintiff, Township of Holmdel (*Lomurro, Davion, Eastman and Munoz,* attorneys).

*Anthony T. Bruno,* for defendant, Zoning Board of Adjustment (*Reussile, Mausner, Carotenuto, Bruno and Berger,* attorneys).

*Dante J. Romanini* for defendant/crossclaimant, Revlon, Inc: (*Kozlov, Seaton, Romanini and Brooks,* attorneys).

HAYSER, J.T.C., temporarily assigned.

In this, the third and final phase of this consolidated litigation, the issue presented is whether the defendant Board of Adjustment wrongfully denied site plan approval to the defendant/crossclaimant, Revlon, Inc.[1]  Essential facts as to the approval denial are not in dispute.

On or about March 23, 1992, defendant/crossclaimant filed an application for a use variance, certain bulk variances and site plan approval.  Hearings as to the use variance request commenced on June 10, 1992, and continued until November 11, 1992, when the applicant requested and was granted bifurcation of its application.[2]

On December 2, 1992, a resolution was adopted by the defendant Board by a vote of 6–0, wherein it was acknowledged that "the applicant has also bifurcated its application pursuant to *R.S.* 40:55D–76 requesting only a use variance," and was granted the use variance requested, but, as acknowledged by the defen-

---

[1] In the first phase it was determined that under the facts of this case, defendant/crossclaimant had bifurcated its development application before defendant Board and plaintiffs, Township of Holmdel and Holmdel Residents for Reasonable Development, Inc., were time barred to challenge the use variance granted, coming approximately ten months after the variance approval and approximately seven months before the site plan decision.  In phase two the court found the adoption of Township Ordinance No. 94–5, which amended the permitted uses in the zone wherein defendant/crossclaimant's property was located, was a valid exercise of the zoning power since it did not prevent any feasible economic use of the property.

[2] The transcripts of these earlier proceedings indicated that numerous issues relating in any respect to site plan review were deferred until that stage of the approval process.  Indeed, in this litigation's first phase, defendant/crossclaimant argued that it had separated its application before the Board.

dant/crossclaimant at the November hearing, the approval was conditioned upon further site plan review by the Board.

Thereafter, without any new public notification, the hearings as to the site plan commenced on January 13, 1993, and continued until April 13, 1994.[3] Certain events occurred during the pendency of the site plan review that eventually impacted upon defendant Board's decision. On April 13, 1993, the Township's Planning Board adopted a Master Plan update which culminated in the adoption of Township Ordinance No. 94–5 on March 8, 1994. This affected defendant/crossclaimant's desired use of its property following the granting of the use variance.

On May 11, 1994, the Board adopted by a 6–0–1 vote a resolution denying site plan approval. Thereafter, the defendant/crossclaimant filed an amended answer in plaintiffs' then pending actions to assert a crossclaim challenging the defendant Board's denial of the site plan approval.

Defendant/crossclaimant takes issue with the following findings and conclusions set forth in the defendant Board's resolution of denial:

1. At paragraphs *1* and *a* and *c*, on pages 5 and 6 of its resolution, the defendant Board reached certain conclusions as to on-site traffic circulation and its negative impact upon off-site traffic conditions concerning Centerville Road, Union Avenue and Route 35, both as to the short and long-term impacts of defendant/crossclaimant's project upon those roadways in the Township.

2. At paragraph *b*, on page 5 of its resolution, the defendant Board concluded that a parking waiver could not be granted due to the failure to identify tenants and their parking needs for the project.

3. Finally, and in summary, at paragraph *2*, on page 6 of its resolution, the defendant Board concluded that the application could not be granted due to the failure of the defendant/crossclaimant to satisfy the negative criteria as it related to "the substantial delays, traffic congestion and safety deficiencies which will occur

---

[3] In its resolution of denial as to the site plan, the Board noted the site plan filed with the Board was dated April 28, 1993, and revised through October 15, 1993.

on Centerville Road and the Applicant's proposed internal roadway," with also the adoption of the Master Plan update and Township Ordinance No. 94–5.[4]

Defendant/crossclaimant essentially argues that the granting of a use variance "protects" it both from a subsequent ordinance amendment eliminating a desired developmental use, and negation by the Board considering the impact of such an ordinance upon a subsequent site plan approval request.

Defendant/crossclaimant, in support of its argument, cites, among other reported decisions, *Farrell v. Estell Manor Zoning Bd. of Adj.*, 193 *N.J.Super.* 554, 475 *A.*2d 94 (Law Div.1984), wherein the court concluded, in discussing the nature of a use variance, that its result, in essence, is to create a conforming use and the duration can be unlimited, running with the land. *But see, Villari v. Zoning Bd. of Adjustment of Deptford*, 277 *N.J.Super.* 130, 649 *A.*2d 98 (App.Div.1994).

■ Nevertheless, it cannot be argued that one who receives the functional equivalent of a permitted use through variance relief is in a superior position to one whose proposed development is permitted under a zoning ordinance from the first moment. The fact that an ordinance is enacted in response to an application for development being filed, *Burcam Corp. v. Planning Bd. of the Tp. of Medford*, 168 *N.J.Super.*, 508, 512, 403 *A.*2d 921 (App.Div. 1979), or a building permit having issued, *Donadio v. Cunningham*, 58 *N.J.* 309, 277 *A.*2d 375 (1971), is not the determining factor. Nor are we concerned here with statutory protections as under, for example, *N.J.S.A.* 40:55D–49 or 52. Moreover, in receiving a variance conditioned upon site plan review, as well known by the defendant/crossclaimant, we are not concerned with

---

[4] Defendant/crossclaimant also took issue with defendant Board's requirement to provide an access easement and right-of-way. *See Kline v. Bernardsville Association, Inc., et al*, 267 *N.J.Super.* 473, 631 *A.*2d 1263 (App.Div.1993). At oral argument, the Board conceded that all it may require is to "condition site plan approval on the applicant's granting a right-of-way to another property owner." *Id.* at 481, 631 *A.*2d 1263. In any event, the site plan approval with this condition was denied.

the type of reliance or vested rights discussed in either *Donadio,* 58 *N.J.* at 322, 277 *A.*2d 375, or *Dimitrov v. Carlson,* 138 *N.J.Super.* 52, 58, 350 *A.*2d 246 (App.Div.1978).

In the final analysis, the issue here also goes well beyond simply the application of the "time of decision" rule, and the possible application of the special equities exception. *See Lake Shore Estates, Inc. v. Denville Tp. Planning Bd.,* 255 *N.J.Super.* 580, 605 *A.*2d 1106 (App.Div.1991), *aff'd o.b. Lake Shore Estates, Inc. v. Township of Denville,* 127 *N.J.* 394, 605 *A.*2d 1073 (1992); *Timber Properties, Inc. v. Tp. of Chester,* 205 *N.J.Super.* 273, 500 *A.*2d 757 (Law Div.1984); and the recent confirmation of the rule's continued viability in *Pizzo Mantin Group v. Tp. of Randolph, et al.,* 137 *N.J.* 216, 235–36, 645 *A.*2d 89 (1994).[5] The issue concerns the basic authority under which a board can grant such relief as the defendant/crossclaimant requested in its site plan submission.

At oral argument, defendant/crossclaimant conceded that the authority for the Board, having granted variance relief pursuant to *N.J.S.A.* 40:55D–70 d, to retain jurisdiction as to the matter of site plan review is to be found in *N.J.S.A.* 40:55D–76 b which provides, in relevant part, that "the separate approval of the variance shall be conditioned upon grant of all required subsequent approvals by the board of adjustment." Indeed, it would be difficult for the defendant/crossclaimant to argue now that it did not seek separate or bifurcated approvals from the Board, since that was precisely its argument in urging the application of the time bar rule in this litigation's first phase.

While the granting of site plan approval normally requires (if not permits) only a determination as to whether specific ordinance provisions have been met, *see, e.g., Pizzo Matin Group,*

---

[5] The equitable considerations discussed in the first phase of this litigation are different from those involved in the present discussion. Whether one's approval has been the subject of a timely challenge, in the absence of which one relies to continue with the development approval process, is very different from the fact that one's right to eventually construct the project is conditioned upon going through, successfully, that further approval process.

137 *N.J.* at 229, 645 *A.*2d 89, a "subsequent approval" following the granting of a use variance requires, under *N.J.S.A.* 40:55D–76 b, a specific determination as to whether the "approval can be granted without substantial detriment to the public good and without substantial impairment of the intent and purpose of the zone plan and zoning ordinance."

Defendant/crossclaimant is correct that there is a paucity of reported decisions as to the application of the cited statute's negative criteria. However, it appears clear that one of the purposes of continuing to impose this negative criteria for subsequent approvals once the use variance is granted is to assure that the Board's creation of what, in essence, becomes a conforming use through the decisional and discretionary process, is still reconciled with the existing zoning scheme, as the process continues. Furthermore, the variance granted can not be seen as a blanket license for the board simply to "legislate" a new use with all its particulars defined only by board fiat. It is also true that site plan approval by such a board under *N.J.S.A.* 40:55D–76 b is only the exercise of ancillary powers, permitted by its primary jurisdiction to grant the use variance in the first instance.

As to the first prong of the cited statute's negative criteria, defendant/crossclaimant argues that the issue of traffic congestion, much of which preexisted this proposed development, involved off-site conditions best left to subsequent resolution by the New Jersey Department of Transportation (DOT).

The impact of a project upon off-site traffic is required to be evaluated under the negative criteria. While the issue in *Price Company, Inc. v. Zoning Bd. of Adj. of the Tp. Of Union,* 279 *N.J.Super.* 327, 652 *A.*2d 784 (Law Div.1993), *aff'd* 279 *N.J.Super.* 207, 652 *A.*2d 723 (App.Div.1994), involved the denial of a use variance, it still required the evaluation as to the negative criteria being met as set forth in *N.J.S.A.* 40:55D–76 b. Therefore, such decisions as *Dunkin' Donuts of N.J. v. Tp. of North Brunswick Planning Bd.,* 193 *N.J.Super.* 513, 475 *A.*2d 71 (App.Div.1984); *El Shaer v. Planning Board of the Tp. of Lawrence,* 249 *N.J.Super.*

323, 592 *A.*2d 565 (App.Div.1991) *certif. denied* 127 *N.J.* 546, 606 *A.*2d 360 (1991); *Tennis Club Assoc. v. Planning Board of the Tp. Of Teaneck,* 262 *N.J.Super.* 422, 621 *A.*2d 79 (App.Div.1993); and *Lionel's Appliance Center, Inc. v. Citta,* 156 *N.J.Super.* 257, 383 *A.*2d 773 (Law Div.1978), are simply not relevant in considering the proper exercise of quasi-judicial discretion as to a subsequent site plan request under the cited statute as to this issue.

■ Moreover, concerns as to ingress and egress and concerns as to on-site conditions related to off-site traffic flow and safety are appropriate to be addressed at the site plan stage. *Dunkin' Donuts, supra,* 193 *N.J.Super.* at 515, 475 *A.*2d 71; *El Shaer, supra,* 249 *N.J.Super.* at 328–29, 592 *A.*2d 565. Finally, the argument that DOT requirements do not mandate or permit the addressing of similar traffic concerns by local authorities in an approval process is simply not correct. *See, e.g., N.J.A.C.* 16:47–3.16(b), and *F. & W. Associates v. County of Somerset,* 276 *N.J.Super.* 519, 648 *A.*2d 482 (App.Div.1994).

As to the second prong of the statute's negative criteria, its application in this case goes well beyond whether the criteria was satisfied at the earlier, but recent, variance stage, whether the application process was to be viewed as a continuation, or whether an ordinance amendment was adopted. The fact is that subsequent to the use variance being approved, the master plan was revised and the ordinance was, indeed, amended. Moreover, beyond the statutory requirements, can it be said that it was unreasonable for defendant Board to require that the impact of the zoning amendment be addressed?

■ The burden of proving the right to relief sought in the application remains, at all times, with the applicant. *Chirichello v. Zoning Bd. of Adj., Monmouth Beach,* 78 *N.J.* 544, 397 *A.*2d 646 (1979). Moreover, a reviewing court is required to presume the Board's exercise of its discretionary authority is valid, and the burden is upon the party challenging the action to prove that the Board was arbitrary, capricious or unreasonable in its decision. *Burbridge v. Governing Body of the Tp. of Mine Hill Tp.,* 117 *N.J.*

376, 568 *A.*2d 527 (1990); *Anastasio v. Planning Bd. of West Orange,* 209 *N.J.Super.* 499, 507 *A.*2d 1194 (App.Div.), *certif. denied* 107 *N.J.* 46, 526 *A.*2d 136 (1986).

█ Prior to considering the approval of a site plan, there must be a determination that the use is permitted under ordinance or functionally permitted by virtue of prior variance relief being granted. *Hill Homeowners Assoc. v. Zoning Bd. of Adj. of the City of Passaic,* 129 *N.J.Super.* 170, 176–77, 322 *A.*2d 501 (Law Div.1974), *aff'd* 134 *N.J.Super.* 107, 338 *A.*2d 824 (App.Div.1975).

The fact that defendant/crossclaimant may have viewed Township Ordinance No. 94–5 as invalid no more relieved it of the responsibility to address the issue than the adoption of the ordinance meant automatically that the earlier variance relief was meaningless and the site plan relief requested was now moot. The fact is that the record is devoid of any addressing of the issue surrounding the ordinance amendment.

█ Clearly, defendant/crossclaimant was or should have been aware of its obligations under *N.J.S.A.* 40:55D–76 b in presenting its case for site plan approval. If it was going to ignore the statutory requirements, why advance an application? The Board, as a result, was not required in its findings to elaborately state the obvious—the utter failure of the defendant/crossclaimant to address the negative criteria of the statute in the site plan review, particularly in view of the ordinance change.[6]

---

[6] As a result of the conclusions reached herein, the court need not consider the continued viability of the holding in *Bridge Park Co. v. Borough of Highland Park,* 113 *N.J.Super.* 219, 273 A.2d 397 (App.Div.1971), particularly in view of defendant Board's concern with on-site traffic flow. *But see, Bonner Properties, Inc. v. Planning Bd. of the Tp. of Franklin,* 185 *N.J.Super.* 553, 567, 449 A.2d 1350 (Law Div.1982). Nor need the court address plaintiff's argument as to the claimed failure to provide "notice" of the site plan request pursuant to *N.J.S.A.* 40:55D–12. Suffice to say, however, that all interested parties were on notice as to the consolidated application filed on or about March 23, 1992, and particularly the initial hearings that commenced on June 10, 1992, as well as the bifurcation at the November hearing.

Furthermore, since defendant Board's findings are not *per se* inadequate given the record before it, specifically as to the issues surrounding the negative criteria being met under *N.J.S.A.* 40:55D–76 b, nor has there been any change as to statutory or case law during the pendency of this matter, there is no proper basis to remand this matter simply to permit defendant/crossclaimant to make a better case than it chose to do in the first instance.

Therefore, in denying the site plan approval, defendant Board was not arbitrary, capricious or unreasonable for the reasons stated herein. The crossclaim is dismissed.

However, nothing herein shall prevent defendant/crossclaimant from either submitting a new site plan application or seeking appropriate variance relief, or for that matter developing the property in accordance with the provisions of Township Ordinance No. 94–5.

Counsel for plaintiff Township shall prepare a final order as to all three phases of this litigation and submit same pursuant to *R.*4:42–1(c).